IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| GIGIMAN G. HAMILTON,              ) | |
|                                                         ) | |
|          **Petitioner,**                       ) | |
|                                                         ) | |
| v.                                                  ) | CASE NO.   13-CV-20-WDS |
|                                                         ) | |
| UNITED STATES OF AMERICA,  ) | |
|          **Respondent.**                   ) | |

## MEMORANDUM & ORDER

**STIEHL, District Judge:**

Before the Court is petitioner's response to the Court's Order, notifying and warning him of the consequences of construing a motion he originally filed in his criminal case as a petition pursuant to 28 U.S.C. § 2255.  (Doc. 3).  Petitioner was directed to respond to the Court's Order, and was informed that he could object to the recharacterization, withdraw the filing, or amend it so that it contained all of the § 2255 claims he believes he has.  (Doc. 2).

## BACKGROUND

Petitioner alleges that he was seven (7) years old when he came to the United States on December 18, 1981.  He has resided in the United States for the past thirty-one (31) years as a lawful permanent resident.   He alleges that he has three children and a wife who are United States citizens, and that his parents and five (5) sisters are all United States citizens.

On May 16, 2006, a Grand Jury returned a one-count Indictment charging petitioner with knowingly and intentionally possessing with intent to distribute five (5) kilograms or more of a mixture or substance containing cocaine, and 100 kilograms or more of a mixture or substance containing marijuana, in violation of 21 U.S.C. § 841(a)(1).  (*See* Case No. 3:06-CR-30068-WDS-1).   After retaining counsel, petitioner alleges that he had asked his

counsel to file a motion to suppress evidence, and asked him about the immigration consequences of a guilty plea and conviction in light of petitioner's status as a lawful permanent resident of the United States. Petitioner alleges that his attorney promised to "look into" the suppression issue, but then advised him to plead guilty and assured him that he would not be deported because he had lived in the United States for a long period of time and because his wife and children were all United States citizens. On January 5, 2007, petitioner pleaded guilty to the one-count Indictment against him.

On April 23, 2007, the same date of petitioner's sentencing, petitioner alleges that his attorney introduced him to an immigration attorney who told petitioner that based upon the offense to which he pleaded guilty, and based on the applicable immigration law, he was deportable, but had a better chance of remaining in the United States if he retained an immigration attorney. Petitioner was sentenced to 108 months imprisonment, and a three year term of supervised release.

In September, 2012, petitioner was released from imprisonment, and was taken into custody by the Department of Homeland Security Immigration and Customs Enforcement ("ICE") and was charged as being removable for the 2007 conviction. Petitioner asserts that he is currently in detention awaiting a removal hearing and that based upon his 2007 conviction, deportation is almost guaranteed. Petitioner submitted documents regarding the removal proceedings currently pending against him, which state that he is subject to removal from the United States based on:

> Section 237(a)(2)(A)(iii) of the Immigration and Nationality Act (Act), as amended, in that, at any time after admission, you have been convicted of an aggravated felony as defined in Section 101(a)(43)(B) of the Act, an offense relating to the illicit trafficking in a controlled substance, as described in section 102 of the Controlled Substances Act, including a drug trafficking crime, as defined in section 924(c) of Title 18, United States Code.

(Doc. 3 at 7-8). The defendant asserts that he has been detained by the Department of Homeland

Security since his release from imprisonment, and that on September 11, 2012, he was served with the Notice To Appear cited above.

In petitioner's original motion (Doc. 1), and his response to the Court's Order (Doc. 3), he requests that his sentence and conviction be vacated based upon his assertion that his guilty plea was involuntary and unintelligent and obtained in violation of his Fifth Amendment right to due process of law, and his Sixth Amendment right to the assistance of counsel. More specifically, petitioner alleges that he received ineffective assistance of counsel in connection with his guilty plea because his retained counsel advised him that he would not be deported as a result of his guilty plea and conviction because he had lived in the United States for so long and because his family lives in the United States.   Petitioner also alleges that the Court did not comply with Rule 11 of the Federal Rules of Criminal Procedure because it did not tell petitioner that he could be deported as a result of his guilty plea and conviction.   Petitioner further asserts that his motion was not filed within § 2255's one year statute of limitations because the issue did not "manifest" until petitioner was released from prison in September, 2012.

## ANALYSIS

**I.     Recharacterization of Petition for a Writ of Error Coram Nobis and/or Audita Querela as § 2255 Petition**

Regarding the Court's recharacterization of his coram nobis motion as a § 2255 petition, petitioner asserts that he "is skeptical of the Court's action and would urge the Court to construe the Petition as filed."   (Doc. 3 at 2).   He explains that he will agree to the recharacterization only if (1) the one-year statute of limitation will not be invoked by the Court or the Government and (2) the Court finds that petitioner is still "in custody" for § 2255 purposes.

Petitioner questions the availability of relief pursuant to § 2255 based on his custody status, citing *United States v. Barber*, 881 F.2d 345 (7th Cir. 1989), *cert. denied*, 495 U.S. 922 (1990), a

case in which the defendant had already completed his sentence and therefore did not satisfy the custody requirement for § 2255 relief. In that case, the court construed the motion to vacate conviction as a petition for a writ of error coram nobis. *Id.* at 348 n.2. The Seventh Circuit has recently explained, however, that coram nobis:

> is a postconviction remedy, equivalent to habeas corpus or (for persons convicted in federal court) section 2255, for petitioners who have served their sentences and so cannot invoke either of those remedies but who as a result of having been convicted are laboring under some serious civil disability that they'd like to eliminate by setting aside their conviction—and removal from the United States is serious, civil, and a consequence of the petitioner's conviction. **But when she filed her petition, she was under supervised release, and so section 2255 was available (and of course invoked by) her, because supervised release is classified as a form of custody.** *E.g., Virsnieks v. Smith*, 521 F.3d 707, 717–18 (7th Cir. 2008); *Kusay v. United States*, 62 F.3d 192, 193 (7th Cir. 1995); *cf. Jones v. Cunningham*, 371 U.S. 236, 242–43, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963). **Coram nobis was therefore unavailable to her.** *Godoski v. United States*, 304 F.3d 761, 763 (7th Cir. 2002); *United States v. Baptiste*, 223 F.3d 188, 189–90 (3d Cir. 2000) (per curiam); *United States v. Brown*, 117 F.3d 471, 474–75 (11th Cir. 1997). For "where a statute specifically addresses the particular issue at hand, it is that authority, and not the All Writs Act, that is controlling. Although that Act empowers federal courts to fashion extraordinary remedies when the need arises, it does not authorize them to issue ad hoc writs whenever compliance with statutory procedures appears inconvenient or less appropriate." *Pennsylvania Bureau of Correction v. United States Marshals Service*, 474 U.S. 34, 43, 106 S.Ct. 355, 88 L.Ed.2d 189 (1985). **There is no coram nobis statute parallel to section 2255, so by invoking coram nobis the petitioner is impermissibly trying to avoid the one-year statute of limitations in that section.**

*Clarke v. United States*, 703 F.3d 1098, 1101-02 (7th Cir. 2013) (emphasis added). In accordance with the Seventh Circuit's analysis above, § 2255 is available to petitioner based on the fact that he is still serving a term of supervised release, which is a form of custody. The Court further concludes that coram nobis is not available to petitioner, and he cannot invoke that remedy as a means to avoid the one-year statute of limitations on § 2255 petitions.

Petitioner has been adequately warned of the consequences of the Court's construction of his motion as a § 2255 petition and has been afforded the opportunity to amend his motion to add

any potential claims he might have. Petitioner's ultimatum for the Court, that he will agree that his motion is a § 2255 petition only if the Court overlooks the relevant applicable law, is impermissible.

Regarding petitioner's alternative characterization of his motion as a petition for Writ of Audita Querela,[1] the Court concludes that petitioner is seeking relief within the scope of § 2255, namely, vacation of his conviction and sentence on the basis that his plea was involuntary, and his petition is, therefore, a § 2255 petition. *See Melton v. United States*, 359 F.3d 855, 857 (7th Cir. 2004) ("Prisoners cannot avoid the AEDPA's rules by inventive captioning. Any motion filed in the district court that imposed the sentence, and substantively within the scope of § 2255 ¶ 1, *is* a motion under § 2255, no matter what title the prisoner plasters on the cover. Call it a motion for a new trial, arrest of judgment, mandamus, prohibition, coram nobis, coram vobis, audita querela, certiorari, capias, habeas corpus, ejectment, quare impedit, bill of review, writ of error, or an application for a Get-Out-of-Jail Card; the name makes no difference. It is substance that controls." (citations omitted)).

## II. § 2255 Petition

Pursuant to § 2255(f)(1), a one year statute of limitations for filing a § 2255 petition generally begins to run on the date on which the judgment of conviction becomes final. The § 2255 statute of limitations can be tolled, however, based on two doctrines:

> One is equitable estoppel, which comes into play "if the defendant takes active steps to prevent the plaintiff from suing in time, as by promising not to plead the statute of limitations" as a defense. *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450-51 (7th Cir. 1990). It has no application to this case. The other doctrine is "equitable tolling. It permits a plaintiff to avoid the bar of the statute of

---

[1] "The ancient writ of audita querela, long ago abolished in federal civil proceedings, see Fed. R. Civ. P. 60(b), has no apparent relevance to criminal sentences. *Black's Law Dictionary* 126 (7th ed. 1999), describes it as a 'writ available to a judgment debtor who seeks a rehearing of a matter on grounds of newly discovered evidence or newly existing legal defenses.' [Petitioner] is not a judgment debtor, and the territory of new facts and law is occupied for civil matters by Rule 60(b) and for criminal matters by Fed. R. Crim. P. 33 plus § 2255." *Melton v. United States*, 359 F.3d 855, 856 (7th Cir. 2004).

> limitations if *despite all due diligence* he is unable to obtain vital information bearing on the existence of his claim." *Id*. at 451 (emphasis added); see also *Ramos-Martinez v. United States, supra*, 638 F.3d at 323-24.

*Clarke*, 703 F.3d at 1101. The latter doctrine coincides with § 2255(f)(4), which provides that the limitation period may begin later, specifically, on "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence."

In the *Clarke* case, the petitioner, a lawful permanent resident, pleaded guilty to fraud after her counsel had advised her that "there might be 'immigration consequences' if she pleaded guilty and was thus convicted." *Id*. at 1099. Clarke's attorney did not specify what those consequences might be. *Id*. The petitioner was removed to Jamaica as a result of removal proceedings that occurred after her release from imprisonment. *Id*. Clarke sought relief pursuant to § 2255 on the basis that the judge and her lawyer failed to advise her that she could be deported upon conviction. *Id.*

The *Clarke* court noted that "[a] lawyer's failure to advise his client concerning a critical consequence of conviction can be a 'fact' supporting a claim of ineffective assistance of counsel." *Id.* at 1100. The court further determined that this fact could have been discovered through due diligence well within a year after petitioner's guilty plea, in light of the fact that the lawyer had mentioned the possible immigration consequences to the petitioner before she pleaded guilty, which "placed her on notice that she might be removed." *Id.* The Seventh Circuit noted:

> because the sentence was irrelevant to the possibility of removal—it is the conviction of an aggravated felony rather than the sentence that makes the defendant removable—the date of her guilty plea was the date on which her duty of diligent inquiry arose. See *Alaka v. Attorney General*, 456 F.3d 88, 107 (3d Cir. 2006). She had loads of time to discover the possible immigration consequences of her plea of guilty.
> 
>    The dependence of the statute of limitations on the petitioner's exercise of due diligence is equivalent to a rule of "inquiry notice," see, e.g., *Doe v. St. Francis School District*, 694 F.3d 869, 872 (7th Cir. 2012); *Nicholson v. Pulte Homes Corp.*, 690 F.3d 819, 826 (7th Cir. 2012); *Ford v. Gonzalez*, 683 F.3d 1230, 1236 (9th Cir. 2012), and the petitioner acquired such notice when her lawyer told her

6

>   that her pleading guilty might have "immigration consequences." That was an ominous warning, and if she didn't understand it she could have asked her lawyer what those consequences might be and if he didn't know the answer he presumably would have inquired. He could have asked the probation service, since the presentence investigation report stated that a "felony conviction may make her amenable to removal proceedings." Apparently the petitioner asked no one what "immigration consequences" she would be facing were she convicted. In all likelihood she didn't think it necessary to ask because she knew full well what they would be. But all that matters is that she was not diligent in trying to discover what they would be. There is no suggestion that she has any difficulties with the English language that might have impeded discovery. She had lived in the United States for many years, and anyway English is the official language of Jamaica, though not all Jamaicans are fluent in it.

*Id.* at 1100-01.

While the circumstances currently before the Court are somewhat different, the same principle applies: the petitioner acquired the relevant "inquiry notice" when his lawyer had an immigration lawyer inform him that his conviction subjected him to possible deportation. Petitioner's own assertions shut the door on any tolling of the § 2255 statute of limitations. Petitioner states, in paragraph 10 of his original motion:

>   On April 23, 2007 the date of Hamilton's sentencing, Mr. Shostak showed up at the courthouse with a man who he introduced as an immigration attorney. This man proceeded to tell Hamilton that because of the offense to which he pleaded guilty, and based on immigration law, Hamilton was deportable, but with an immigration attorney Hamilton had a better chance of remaining in the United States.

(Doc. 1 at 3). Based upon this fact, petitioner's counsel put him on notice, at least as of April 23, 2007, that petitioner was deportable based on his conviction. At this point, in 2007, it is indisputable that petitioner knew that counsel's previous advice was erroneous, and that he was deportable.

Although the petitioner was informed of his potential deportation at a less opportune time than Clarke, he still had notice as of the date of his sentencing, and he could have asked the Court, at the sentencing hearing, for permission to withdraw his plea of guilty. He also could have filed

a direct appeal, or, a timely § 2255 petition. Petitioner had notice of his potential ineffective assistance claim before the statute of limitations clock started running and in plenty of time to timely file a § 2255 petition. Petitioner's conviction became final when he was sentenced, and the sentence became final when the deadline for filing a notice of appeal expired, which was in May, 2007. *See Clarke*, 703 F.3d at 1100. Petitioner's current motion, originally filed in his criminal case on January 7, 2013, is nearly five years too late.

Even though petitioner may have had a meritorious claim of ineffective assistance of counsel based on his allegations that his counsel, prior to his plea, gave him erroneous advice as to the immigration consequences of his plea, he waited too long to act on his claims.[2] Petitioner simply cannot defeat the statute of limitations issue in this case.

This case is also different from the *Clarke* case in that Clarke's attorney alerted her generally to "possible immigration consequences" before she pleaded guilty. *Id.* Here, petitioner had already pleaded guilty, believing, based on counsel's alleged misstatements, that he would not be deported. While petitioner's ineffective assistance claim is arguably stronger than Clarke's on this basis, petitioner's counsel gave much more specific notice than Clarke's attorney:

---

[2] The Supreme Court, in *Padilla v. Kentucky*, 559 U.S. 356, 130 S.Ct. 1473, 1486 (2010), held that the Sixth Amendment requires that an attorney inform his client of whether his plea carries a risk of deportation. *Id.* at 1486. Mr. Padilla's situation was similar to the circumstances alleged by petitioner: his counsel told him not to worry about immigration status because Padilla had been in the United States for a long period of time, and Padilla relied on this erroneous advice when he pleaded guilty to transporting a large amount of marijuana in his tractor trailer; a conviction which made his deportation essentially mandatory. *Id.* at 1478. Padilla asserted that he would have gone to trial had he not received erroneous advice from counsel. *Id.* at 1478. The Supreme Court determined that Padilla's counsel was deficient (satisfying the first prong of *Strickland*) in that "[t]he consequences of his plea could easily be determined from reading the removal statute, his deportation was presumptively mandatory, and his counsel's advice was incorrect." *Id.* at 1483.
        The Supreme Court recently held, however, that the *Padilla* holding is not retroactive, and therefore not applicable to persons whose convictions became final before March 31, 2010, the date *Padilla* was decided. *Chaidez v. United States*, ___ U.S. ___, No. 11-820, 2013 WL 610201 (February 20, 2013). Even if petitioner had timely filed an ineffective assistance claim on the basis that his counsel misadvised him with respect to immigration consequences, which, under *Padilla*, sufficiently alleged that his counsel was constitutionally deficient, his claim would still fail, because *Padilla* does not apply to petitioner, whose conviction became final in 2007.

he introduced petitioner to an immigration attorney who specifically told him that he was deportable based on his conviction, instead of merely warning him of vague potential immigration consequences.

Ultimately, the Court will not reach the merits of petitioner's claim, however, because this case turns on notice, and petitioner has alleged that he had notice of the immigration consequences of his guilty plea as of April 23, 2007.  As soon as petitioner knew these facts, the notice requirement was met, and petitioner was required to exercise diligence regarding his ineffective assistance claim.  Petitioner has not alleged any impediment to his timely filing a § 2255 claim, but merely alleges that the deportation issue only recently "manifested" when the removal proceedings began.  This is simply not the case.  The deportation issue "manifested," for purposes of this motion, in 2007.

Furthermore, petitioner has presented no basis upon which § 2255's statute of limitations could be tolled.  He did not allege that the defendant took active steps to prevent him from suing in time, foreclosing the applicability of this tolling doctrine.  Additionally, equitable tolling is not available to petitioner because, as in *Clarke*, petitioner "flunked diligence."  *Clarke*, 703 F.3d at 1101.

With respect to petitioner's claim that the Court failed to advise him of the potential immigration consequences of his guilty plea, the Court notes that this claim is not only untimely, but also, procedurally defaulted because he did not raise this claim on direct appeal or argue cause for the procedural default and actual prejudice from the failure to appeal.  *See Sandoval v. United States*, 574 F.3d 847, 850 (7th Cir. 2009).  In accordance with the Court's analysis above, petitioner had notice of consequences of his guilty plea in time to file both a direct appeal and a § 2255 petition, but he did not do so.  Furthermore, even if this claim was not procedurally

defaulted, "Rule 11 and due process do not require district courts to inform defendants of potential immigration consequences associated with a guilty plea," and "the *Padilla* Court did not address this issue." *Yau v. United States*, No. 11 C 8462, 2012 WL 245201, at *4 (N.D. Ill. January 26, 2012) (citing *United States v. Montoya*, 891 F.2d 1273, 1293 (7th Cir. 1989)).

### III. Hearing

Petitioner has not requested a hearing. Because summary dismissal of a § 2255 motion is appropriate when the motion and the files and records of the case conclusively demonstrate that the petitioner is not entitled to relief, this Court **FINDS** that it is unnecessary to hold a hearing. 28 U.S.C. § 2255(b) (2010), *see also, Politte v. United States*, 852 F.2d 924, 931 (7th Cir. 1988).

### IV. Certificate of Appealability

Should Petitioner desire to appeal this Court's ruling dismissing his motion under 28 U.S.C. § 2255, he must first secure a certificate of appealability, either from this Court or from the Court of Appeals. *See* FED. R. APP. P. 22(b); 28 U.S.C. § 2253(c)(1). Pursuant to 28 U.S.C. § 2253, a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."

This requirement has been interpreted by the Supreme Court to mean that an applicant must show that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Petitioner need not show that his appeal will succeed, *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003), but Petitioner must show "something more than the absence of frivolity" or the existence of mere "good faith" on his part. *Id*. at 338 (*quoting Barefoot v. Estelle*, 463 U.S. 880, 893 (1983)). If the district court denies the request, a petitioner may request that a circuit judge issue the certificate of appealability. FED. R. APP. P. 22(b)(1)-(3).

For the reasons detailed above, the Court has determined that petitioner has not stated any grounds for relief under § 2255.   Furthermore, the Court finds no basis for a determination that its decision is debatable or incorrect.   Thus, Petitioner has not made "a substantial showing of the denial of a constitutional right."

**IT IS THEREFORE ORDERED** that a certificate of appealability shall **NOT** be issued.

## CONCLUSION

The Court **DENIES** petitioner's motion to vacate, set aside or correct sentence on all grounds raised, and **DISMISSES** the petition with prejudice.   Each party shall bear its own costs.

A Certificate of Appealability shall **NOT** be issued.

The Clerk of the Court is **DIRECTED** to enter judgment accordingly.


**IT IS SO ORDERED.**

**DATE: March 6, 2013**

                                        **/s/   WILLIAM D. STIEHL**
                                               **DISTRICT JUDGE**